1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ARAM MKRTCHYAN,                          No.  2: 17-cv-2366 TLN KJN

12                Plaintiff,

13        v.                                  ORDER

14   SACRAMENTO COUNTY, et al.,

15                Defendants.

16

17   I.      Introduction

18          Plaintiff is proceeding through counsel with a civil rights action pursuant to 42 U.S.C.

19   § 1983.  Pending before the court is plaintiff's motion for sanctions for spoliation of video

20   evidence.[1]  (ECF No. 44.)  On September 16, 2021, the undersigned conducted a hearing

21   regarding plaintiff's pending motion.  Patrick H. Dwyer appeared on behalf of plaintiff.  Matthew

22   W. Gross and Carl L. Fessenden appeared on behalf of defendants.

23          Following the September 16, 2021 hearing, the undersigned ordered the parties to file

24   further briefing.  (ECF No. 48.)  On October 8, 2021, defendants filed further briefing.  (ECF No.

25   50.)  On October 21, 2021, plaintiff filed a reply to defendants' further briefing.  (ECF No. 51.)

26   ////

27   _____

28   [1]  Plaintiff also moved for sanctions based on alleged spoliation of medical records.  On
     September 23, 2021, the undersigned denied this request for sanctions.  (ECF No. 49.)

1

For the reasons stated herein, plaintiff's motion for sanctions is granted.  However, plaintiff's request for an adverse inference instruction is denied without prejudice.  Instead, defendants are ordered to pay plaintiff the costs for bringing the pending motion.

II.     Legal Standard

Plaintiff moves for sanctions based on the alleged spoliation of video evidence pursuant to Federal Rule of Civil Procedure 37, which addresses the legal standard for spoliation of electronically stored information ("ESI").

Before determining the appropriate sanctions, Rule 37(e) requires the Court to assess the following four criteria:  (1) whether the information qualifies as electronically stored information ("ESI"); (2) whether the ESI is "lost" and "cannot be restored or replaced through additional discovery"; (3) whether the ESI "should have been preserved in the anticipation or conduct of litigation"; and (4) whether the responding party failed to take reasonable steps to preserve the ESI.  Colonies Partners, L.P. v. County of San Bernardino, 2020 WL 1496444, at *2 (Feb. 27, 2020 C.D. Cal.) (citing Fed. R. Civ. P. 37(e)).   If those criteria are met, and the reviewing court finds there is "prejudice to another party from [the] loss of the [ESI]," the Court may "order measures no greater than necessary to cure the prejudice."   Id. (citing Fed. Rule of Civil Procedure 37(e)(1)).

If, however, the party that was supposed to have preserved the ESI "acted with the intent to deprive another party of the information's use in the litigation," Rule 37(e)(2) authorizes the following sanctions:

> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Id. at *3 (citing Federal Rule of Civil Procedure 37(e)(2).

"'The applicable standard of proof for spoliation in the Ninth Circuit appears to be by a preponderance of the evidence.'"  Id. (quoting Ramos v. Swatzell, 2017 WL 2857523, at *5 (C.D. Cal. June 5, 2017) (internal citations omitted)).

III.     Plaintiff's Allegations

All parties and the court are familiar with the allegations and claims raised in this action. For this reason, plaintiff's allegations and claims need not be set forth in this order.

IV.     Background

In the pending motion, plaintiff alleges that in a request for production of documents dated September 17, 2019, he asked defendants to produce all video of plaintiff while he was in custody at either the Rio Cosumnes Correctional Center ("RCCC") Jail or the Sacramento County Main Jail ("Main Jail") on or about the dates and times set forth in the amended complaint in paragraphs 19, and 22-53.  (ECF No. 44-1 at 10.)  The allegations in the amended complaint span from the date of plaintiff's alleged injury at RCCC on August 29, 2016, to his transfer to the Main Jail on September 6, 2016, and to his release from the Main Jail on April 23, 2017.

Plaintiff alleges that in response to the request for video, defendants produced six short videos from August-September 2016.  (Id. at 11.)  Defendants informed plaintiff that they were unable to provide further video because "no videos responsive to this request have existed."  (Id.)

In the pending motion, plaintiff contends that defendants' failure to request a litigation hold resulted in the loss of the video.  (Id. at 5.)  Plaintiff contends that three documents put defendants on notice of their duty to preserve the at-issue videos:  his January 13, 2017 tort claim, his February 2, 2017 administrative grievance, and his original complaint filed November 12, 2017.  (Id. at 5-10.)

In opposition to plaintiff's motion, defendants contend that by the time defendants began searching for video evidence in September 2019 (when plaintiff served the request for production of documents), the 25-months retention period for video had passed and there was no video evidence to preserve.  Defendants also contend that even if a search had been done prior to the date of discovery requests, the jail computer server was corrupted and video between 2016 and 2017 was lost, the period of time plaintiff was in custody.  Defendants contend that any video surveillance would likely have been lost due to the data loss and corrupted files.

Defendants also contend that plaintiff's administrative grievance, tort claim and November 12, 2017 original complaint, did not put defendants on notice that they were required

3

1   to capture video of plaintiff's entire stay at the jail.  Defendants contend that plaintiff's complaint

2   alleges only a denial of medical care.

3       Defendants also argue that plaintiff's motion for sanctions is untimely because plaintiff

4   waited almost two years after receiving defendants' response to the September 2017 request for

5   production of documents to file the pending motion.

6       Following the September 17, 2021 hearing, the undersigned ordered defendants to file

7   further briefing addressing whether, when and by whom a litigation hold was requested on the

8   missing video.  (ECF No. 48 at 3.)  Assuming a litigation hold was made, defendants were

9   directed to provide further information regarding the litigation hold.  (Id.)  Defendants were also

10   ordered to address the jail video retention policy.  (Id.)

11      V.     Timeliness of Plaintiff's Motion

12       "A spoliation motion 'should be filed as soon as reasonably possible after discovery of the

13   facts that underlie the motion.'"  Montoya v. Orange County Sheriff's Dept., 2013 WL 6705992,

14   at *6 (C.D. Cal. Dec. 18, 2013) (quoting Goodman v. Praxair Services, Inc., 632 F.Supp.2d 494,

15   506-08 (D. Md. 2009)).

16       "The deadline by which a party must file a motion for spoliation is a rather unsettled

17   matter in this circuit."  Wine Education Council v. Arizona Rangers, 2021 WL 3550213, at *2 (D.

18   Ariz. Aug. 11, 2021).  "Multiple courts have held a motion for spoliation untimely when a party

19   raises it after the close of discovery."  Id. (citations omitted).  "Other courts permit parties to raise

20   issues of spoliation after discovery has closed so long as the claim is raised 'as soon as reasonably

21   possible after [uncovering] the facts that underlie the motion."  Id. (citations omitted).  "However,

22   even courts adopting this more flexible timeline have stated that spoliation motions are subject to

23   chambers discovery rules and applicable deadlines."  Id.

24       In the opposition, defendants argue that plaintiff's pending motion for sanctions, filed

25   August 16, 2021, is untimely.  Defendants contend that plaintiff was aware of the absence of

26   video recording on at least October 16, 2019, when he received defendants' responses to

27   plaintiff's request for production of documents, set one.  Defendants also contend that plaintiff

28   was aware of the missing video during a February 2020 deposition of Lawrence Perry.

1   Defendants contend that plaintiff waited almost two years after he became aware of the missing

2   video to file the pending motion.

3        In the reply, plaintiff contends that he discovered the missing video through depositions in

4   February and March 2020.  (See ECF No. 46-1 at 1 (counsel's declaration).)  Plaintiff contends

5   that he waited to file the pending motion until after he completed the deposition of Nancy

6   Gallagher and discovered other missing evidence, i.e., plaintiff's case management file.  (Id. at 2.)

7   Plaintiff argues that he waited to file one spoliation motion on August 16, 2021, which was three

8   and one-half months before the November 30, 2021 discovery deadline.  (See ECF No. 37 at 2

9   (scheduling order).)  Plaintiff also argues that the pandemic impacted his litigation of this action.

10       In Goodman v. Praxair Services, Inc., 632 F.Supp.2d 494 (D. Md. 2009), cited by

11   defendants in the opposition, the court cited four factors courts use to assess the timeliness of a

12   spoliation motion.  "First, '[k]ey to the discretionary timely assessment of lower courts is how

13   long after the close of discovery the relevant spoliation motion has been made…'"  Id. at 506

14   (citations omitted).  "Second, a court should examine the temporal proximity between a spoliation

15   motion and motions for summary judgment."  Id. (citations omitted).  "Third, courts should be

16   wary of any spoliation motion made on the eve of trial."  Id.  (citations omitted).  "Fourth, courts

17   should consider whether there was any governing deadline for filing spoliation motions in the

18   scheduling order pursuant to Fed. R. Civ. P. 16(b) or by local rule."  Id.

19               The lesson to be learned from the cases that have sought to define
20               when a spoliation motion should be filed in order to be timely is that
                 there is a particular need for these motions to be filed as soon as
21               reasonably possible after discovery of the facts that underlie the
                 motion. This is because resolution of spoliation motions are fact
22               intensive, requiring the court to assess when the duty to preserve
                 commenced, whether the party accused of spoliation properly
23               complied with its preservation duty, the degree of culpability
                 involved, the relevance of the lost evidence to the case, and the
24               concomitant prejudice to the party that was deprived of access to the
                 evidence because it was not preserved. See, e.g., Silvestri, 271 F.3d
25               at 594–95. Before ruling on a spoliation motion, a court may have to
                 hold a hearing, and if spoliation is found, consideration of an
26               appropriate remedy can involve determinations that may end the
                 litigation or severely alter its course by striking pleadings, precluding
27               proof of facts, foreclosing claims or defenses, or even granting a
                 default judgment. And, in deciding a spoliation motion, the court
28               may order that additional discovery take place either to develop facts
                 needed to rule on the motion or to afford the party deprived of

5

1
2
3
4
5
6
7

> relevant evidence an additional opportunity to develop it from other sources. The least disruptive time to undertake this is during the discovery phase, not after it has closed. Reopening discovery, even if for a limited purpose, months after it has closed or after dispositive motions have been filed, or worse still, on the eve of trial, can completely disrupt the pretrial schedule, involve significant cost, and burden the court and parties. Courts are justifiably unsympathetic to litigants who, because of inattention, neglect, or purposeful delay aimed at achieving an unwarranted tactical advantage, attempt to reargue a substantive issue already ruled on by the court through the guise of a spoliation motion, or use such a motion to try to reopen or prolong discovery beyond the time allotted in the pretrial order.

8    Id.

9         The undersigned is troubled that plaintiff waited so long to file the pending motion after

10   discovering the missing video.  Plaintiff's excuses for his delay in filing the pending motion, i.e.,

11   he waited to file one spoliation motion and the pandemic impacted his litigation of this action, are

12   not particularly persuasive.  However, plaintiff filed his motion approximately three and one-half

13   months before the discovery cut-off.  Plaintiff's motion did not violate any deadline for filing

14   such a motion contained in the scheduling order or the Local Rules.

15         In Goodman, the court focused on prejudice to the court and the opposing party caused by

16   the delay in bringing a motion for sanctions based on alleged spoliation of evidence.  Taking into

17   consideration the discussion in Goodman and the other case law discussed above, the undersigned

18   finds no significant prejudice caused by plaintiff's delay in filing the pending motion because it

19   was filed before the discovery deadline.  Accordingly, defendants' request to deny plaintiff's

20   motion as untimely is denied.[2]

21   ////

22

23   ---

[2] The undersigned has reviewed the four cases cited by defendants in the opposition in support of the request to deny plaintiff's motion as untimely.  In three of the cases, the courts found the motions for sanctions based on alleged spoliation of evidence untimely because they were filed after the close of discovery.  Olson v. Shawnee County Bd. Of Com'rs,7 F.Supp.3d 1162, 1200 (March 21, 2014); Larios v. Lunardi, 442 F.Supp.3d 1299, 1306 (E.D. Cal. March 5, 2020); Goodman v. Praxair Services, Inc., 632 F.Supp.2d 494 (D. Md. July 7, 2009).  In Cottle-Banks v. Cox Communications, Inc., 2013 WL 2244333, at *16 (S.D. Cal. May 21, 2013), the court found the motion for sanctions untimely, in part, based on the chamber's rule that discovery disputes must be filed within thirty days of the date upon which the event giving rise to the dispute occurred.  Id.

1    VI.    Discussion—Application of Rule 37

2        A.    Is the Missing Video ESI?

3        The parties do not dispute that the missing video is ESI, subject to the standards set forth

4    in Rule 37.

5        B.    Is the Video Lost and Can It be Restored or Replaced Through Additional Discovery?

6        The parties do not dispute that the video is lost and cannot be restored or replaced through

7    additional discovery.

8        C.    Should the Videos Have Been Preserved in the Anticipation or Conduct of Litigation?

9        As discussed at the September 16, 2021 hearing, plaintiff's January 13, 2017 tort claim

10   and February 2, 2017 administrative grievance did not put defendants on notice to preserve video

11   evidence.  The gravamen of plaintiff's February 2, 2017 administrative grievance concerns the

12   confiscation of his wheelchair.  (ECF No. 45-1 at 8-9.)  The gravamen of plaintiff's January 13,

13   2017 tort claim is the alleged delay in plaintiff's receipt of surgery and the denial of access to

14   programs.  (Id. at 11.)  Neither of these documents put defendants on notice to preserve video of

15   plaintiff during his incarceration at the Sacramento County Jail.

16       In the September 20, 2021 further briefing order, the undersigned tentatively found that

17   plaintiff's original complaint, filed November 12, 2017, put defendants on notice of their duty to

18   preserve certain video:

19               In claim two of the original complaint, plaintiff alleges that
20          defendants Dominguez, Yang, Meier and Grout violated the Eighth
             Amendment by denying 1) plaintiff's need for timely surgery; 2)
21          denying plaintiff's use of a wheelchair and other means to allow
             plaintiff not to bear weight on his feet until they healed; 3) denying
22          plaintiff bathroom and shower facilities designed for handicapped
             persons; and 4) failing to assign plaintiff to a ground floor with a
23          lower bunk.  (ECF No. 1 at 19-20.)

24               In claim three of the original complaint, plaintiff alleges that
             defendants Dominguez, Yang, Meier and Grout violated the Eighth
25          Amendment by 1) denying plaintiff the use of a wheelchair; 2)
             forcing plaintiff to walk excessive distances on crutches or with a
26          cane; 3) forcing plaintiff to crawl on the ground; 4) denying plaintiff
             the use of a shower and bathroom facilities for handicapped persons;
27          and 5) denying plaintiff a bunk on a lower tier of a double bunk.  (Id.
             at 21.)

28   ////

                                    7

In support of claims two and three, plaintiff alleges, in relevant part, that upon his arrival at the Main Jail, defendant Dominguez grabbed his crutches and made him hop to an attorney-client no-contact room. (Id. at 11-12.)  Plaintiff alleges that defendant Dominguez later escorted plaintiff on his crutches to a holding tank with a toilet and then took plaintiff's crutches. (Id. at 12.)  While in the holding tank, plaintiff had a panic attack and had to crawl on the floor to activate the emergency button.  (Id.)

Plaintiff alleges that on February 6, 2017, defendant Yang made plaintiff move to different cell using only a cane. (Id. at 15.)  Plaintiff had to drag his bag of belongings, weighing about 80 pounds, behind him.  (Id.)

Plaintiff alleges that on February 8, 2017, defendant Meier refused to give plaintiff a wheelchair ride over to the elevator that would take plaintiff back to the top tier.  (Id. at 16.)  Plaintiff alleges that he had to hop on his left foot for ten feet, but that was so painful that plaintiff then crawled for another 20 feet and got on the elevator.  (Id.)

Plaintiff alleges that on February 8, 2017, defendant Grout denied his request for a lower tier and lower bunk.  (Id.)  Defendant Grout denied this request and told plaintiff to go to his assigned bunk.  (Id.)  "Plaintiff did his best to go back up the stairs, but he could not."  (Id.)

The undersigned tentatively finds that the allegations set forth above put defendants on notice of their duty to preserve video of these alleged incidents.

(ECF No. 48 at 2-3.)

The undersigned now conclusively finds that plaintiff's November 12, 2017 original complaint put defendants on notice to preserve video of the incidents discussed in the September 20, 2021 order.  CTC Global Corporation v. Huang, 2019 WL 6357271, at *2 (C.D. Cal. July 3, 2019) (quoting In Re Napster, Inc. Copyright Litig., 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006) ("'As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.'").

In the opposition to plaintiff's motion, defendants argue they had no duty to preserve the at-issue video until they received plaintiff's request for video in the September 17, 2019 request for production of documents.  In support of this argument, defendants cite two cases, Hugler v. Sw Fuel Mgmt., Inc., 2017 WL 8941163, at *7 (C.D. Cal. May 2, 2017), and Scalia v. KP Poultry Inc., 2020 WL 6694315, at *5-6 (C.D. Cal. Nov. 6, 2020).  Defendants argue that in these cases, the courts found that the defendants were alerted to preserve video following discovery requests

8

1    for video.  Defendants argue that similar to Huglar and Scalia, the filing of the complaint itself, in

2    this case, was not enough to trigger a duty to preserve video.  The undersigned herein discusses

3    Hugler and Scalia.

4          Hugler and Scalia involved complaints alleging violations of the Fair Labor Standards Act

5    ("FSLA").  In Hugler, the complaint alleged that defendants paid wages at less than the applicable

6    federal minimum wage, failed to compensate employees for workweeks in excess of 40 hours at

7    rates not less than one and one-half times the regular rates, and failed to maintain, keep and

8    preserve records of employees and the wages, hours and other conditions, as required by Title 29,

9    Code of Federal Regulations, Part 526.  2017 WL 8941163, at *2.  The complaint in Scalia

10   alleged that defendants failed to pay overtime, minimum wage, failed to keep accurate records of

11   workers' hours, and paid their workers off the books for unrecorded work.  2020 WL 6694315, at

12   *1.

13         In Hugler, the Special Master found that defendant's duty to preserve video evidence

14   commenced when the Secretary of Labor served defendant with the First Set of Requests for

15   Production of Documents.  2017 WL 8941163, at *7.  "As of that date, [defendant] had no actual

16   notice that they must take reasonable steps to preserve the videos."  (Id.)  In Scalia, the court

17   found that the defendants were first alerted to the relevance of the video on the date of the Fourth

18   Request for Production of Documents, which explicitly requested the video.  2020 WL 6694315,

19   at *5.

20         The FSLA violations in the Hugler and Scalia complaints involved alleged failures to

21   properly compensate employees and failures to maintain proper records.  These allegations did

22   not put the defendants on notice of their duty to preserve video evidence.  In contrast, plaintiff's

23   original complaint challenges conditions of confinement in the Sacramento County Jail and

24   alleges specific incidents of misconduct.  The relevancy of the at-issue video is clear from the

25   face of plaintiff's original complaint.  For these reasons, the undersigned is not persuaded by

26   defendants' citations to Hugler and Scalia.

27   ////

28   ////

1     D.   <u>Is the Video Lost Because Defendants Failed to Take Reasonable Steps to Preserve</u>

2         <u>the Video?</u>

3     Plaintiff argues that defendants failed to take reasonable steps to preserve the video after

4 receiving the complaint.  Plaintiff argues that had defendants placed a litigation hold at the time

5 they received the complaint, the video could have been preserved.  Plaintiff also argues that the

6 alleged video computer problems at the jail did not prevent retention of the video.

7     *Did Defendants Place a Litigation Hold?*

8     For the reasons stated herein, the undersigned finds that defendants failed to place a

9 litigation hold regarding the at-issue video at the time they received the original complaint.

10     In support of their further briefing, defendants filed a declaration from Rosalyn McDaniel,

11 Projects Officer for the Sacramento County Sheriff's Office from 2013 to her retirement in March

12 2018.  (ECF No. 50-2 at 2.)  As the Projects Officer, Ms. McDaniel's responsibilities included

13 saving and retaining video surveillance inside the Sacramento County Mail Jail.  (<u>Id.</u>)  In her

14 declaration, Ms. McDaniel states that she has no recollection if a request was made for video in

15 this lawsuit while she was the Projects Officer.  (<u>Id.</u> at 2.)  She also states that because more than

16 two years passed since any request for video may have been made, there are no records or

17 documents to support whether a request for video was made.  (<u>Id.</u>)  Ms. McDaniel's deposition

18 testimony, submitted by plaintiff, is consistent with her declaration regarding these matters.  (ECF

19 No. 44-2 at 214-14, 226, 234.)

20     After reviewing Ms. McDaniel's deposition testimony and declaration, the undersigned

21 finds that Ms. McDaniel provides no information regarding whether a litigation hold was

22 requested.

23     In a declaration filed in support of the further briefing, defense counsel Matthew Goss

24 states that on December 13, 2016, Sacramento County, through its third-party administrator

25 George Hills, received a copy of the complaint.  (ECF No. 50-1 at 1-2.)  On December 18, 2017,

26 George Hills Company assigned the matter to the Law Offices of Cregger and Chalfant LLP and

27 Mr. Robert Chalfant.  (<u>Id.</u> at 2.)  On or around August 14, 2018, prior counsel filed a notice of

28 substitution of counsel, and Porter Scott APC took over the defense of the matter.  (<u>Id.</u>)  During

1   this time period, Porter Scott was advised by Mr. Chalfant that the only video that existed was of

2   plaintiff jumping off a fence and presumably injuring his ankle.  (Id.)  In his declaration, Mr.

3   Goss states, "I have conducted an exhaustive and thorough search of the records from George

4   Hills Company, the file received from Mr. Chalfant, and counsel's case records and [sic] does not

5   have any information regarding whether a litigation hold was requested in this matter."  (Id.)

6       In his declaration, Mr. Goss also states that on September 19, 2019, counsel for

7   defendants received plaintiff's request for production of documents (set one).  (Id.)  On

8   September 27, 2019, counsel for defendants requested from the county copies of all video

9   surveillance.  (Id.)  "This is the first time counsel for defendants was able to confirm video was

10   requested—and counsel has been unable to locate any prior emails or correspondence to show a

11   prior request for video was made."  (Id.)  The former associate on the file, Nick McKinney,

12   received two confirmations from Danielle Beard, the current Projects Officer for the Sacramento

13   County Sheriff's Office on October 3, 2019 and October 10, 2019, that no video exists.  (Id.)  Mr.

14   Goss concludes, "I am unable to confirm what efforts were made to preserve video as too much

15   time has passed."  (Id.)

16       If a litigation hold had been made, including a litigation hold regarding video, the

17   undersigned finds that it presumably would have been preserved in the files of the George Hills

18   Company and/or former defense counsel, Mr. Chalfant.  However, present defense counsel cannot

19   locate a litigation hold in the files he received from the George Hills Company and Mr. Chalfant.

20   Thus, it is reasonable to infer that neither George Hills Company nor Mr. Chalfant requested a

21   litigation hold regarding the video after receiving plaintiff's complaint.  Accordingly, the

22   undersigned finds that the preponderance of the evidence demonstrates that defendants failed to

23   place a litigation hold regarding the at-issue video after receiving plaintiff's original complaint.

24       *Jail Video Retention Policy and Problems with the Video Computers*

25       In the pending motion, plaintiff alleges that the at-issue video could have been retrieved at

26   the time the complaint was filed on November 12, 2017, despite the alleged video computer

27   problems at the jail.  The undersigned discusses herein the evidence regarding the jail computer

28   problems.

11

1    In response to the order for further briefing regarding the jail computer problems and

2    video retention policy, defendants submitted the declaration of Rosalyn McDaniel.  Plaintiff also

3    relies on the deposition of Ms. McDaniel regarding this issue.  Thus, it appears that both parties

4    agree that Ms. McDaniel is the person most knowledgeable regarding the computer problems and

5    video retention policy.  The undersigned discusses Ms. McDaniel's relevant deposition testimony

6    and declaration herein.

7    At her deposition, Ms. McDaniel testified that she was in charge of the jail video system

8    from 2013 to her retirement in March 2018.  (ECF No at 214-15, 226.)  Officer Perry and

9    Danielle Beard replaced her in that position.  (Id. at 215.)  During her deposition, Ms. McDaniel

10   testified regarding the video computer problems:

> Because the Pivot 1 server had gone down, and the archive system,
> which held all the video for booking and the floors had become
> overloaded, and because it became overloaded, it caused the system
> to crash.  And once the system crashed like that, it caused it to where
> the system starts pretty much dropping video.

14   (Id. at 220.)

15   Ms. McDaniel testified that the "big problem" first developed in October 2016.  (Id.)

16   McDaniel testified that one of the three servers crashed.  (Id. at 248.)  Ms. McDaniel testified that

17   despite the crash, the video system kept working because they still had two other servers.  (Id. at

18   223-23.)  Ms. McDaniel testified that on the server that crashed, they had been recording video

19   from the booking area and the floors.  (Id. at 223.)  No report was prepared indicating what data

20   was lost due to the crashed server.  (Id.)  She testified that random files were deleted.  (Id. at 247.)

21   Ms. McDaniel testified that after this technical problem in October 2016 until she left the

22   position, there were no further significant technical problems that she was aware of.  (Id. at 223.)

23   Ms. McDaniel testified that in March 2017, Delta Wireless won the bid to upgrade the

24   camera system, and by the end of June or July 2017, that new system was installed.  (Id. at 225.)

25   There were no major gaps or failures of the system in that changeover from one company to the

26   other.  (Id.)  Ms. McDaniel testified that there was no loss of data as a result of the changeover in

27   systems.  (Id.)  However, any video lost in the October 2016 crash would not be on the new

28   system.  (Id. at 248.)

1      Ms. McDaniel testified that with the new system (installed in July 2017), the jail had the

2 same capability to search for information.  (Id. at 226.)

3      Ms. McDaniel testified that if she had been asked to search for video from September-

4 October 2016 in the fall of 2017 or early 2018, she would have made a search because the video

5 lost as a result of the October 2016 crash was random.  (Id. at 253-54.)  Ms. McDaniel testified

6 that while she would have conducted such a search if requested, it is possible that all of the

7 requested video may have been deleted due to the crash.  (Id. at 254.)

8      In her declaration submitted in support of defendants' further briefing, Ms. McDaniel

9 discusses the computer problems.  The undersigned sets forth the relevant sections of her

10 declaration herein:

11        2.  I am the former Projects Officer for Sacramento County Sheriff's
Office.  I held the position from 2013 until my retirement in March
12        2018.  As the Projects Officer, my job responsibilities included
saving and retaining video surveillance inside the Sacramento
13        County Main Jail made by the Sacramento County Sheriff's Office-
Legal Affairs team.  I would receive a request from the Legal Affairs
14        team and then review the requested video cameras, save the video
files, and prepare a DVD copy to be shared with the Legal Affairs
15        team.

16        3.  During the time period, the Sacramento County Sheriff's Office
worked with Status Automation to service, install, maintain, and
17        oversee the video surveillance system.  In approximately October
2016, the Main Jail suffered a significant server crash and video was
18        lost during this time period.  Delta Wireless video system was
installed.  During this time period, Status Automation continued to
19        operate, record, and save video while the new system was being
installed.  I am not aware of any failures during this period with lost
20        video.

21 (ECF No. 50-2 at 2.)

22      In her declaration, Ms. McDaniel also states that the Sacramento County Sheriff's Office

23 maintains a 25-month retention period for video surveillance.  (Id.)  Ms. McDaniel states that the

24 video is automatically erased every day pursuant to this policy once the video becomes older than

25 25 months.[3]  (Id.)

26 _____

27 [3]  Plaintiff also submitted the deposition transcript of Officer Perry, who replaced Ms. McDaniel
as Project Officer when she retired in March 2018.  (ECF No. 44-2 at 157.)  In contrast to Ms.
McDaniel, Officer Perry testified that the "old system" failed around December 17 or 18, 2017.
28 (Id. at 153.)  Because both parties agree that Ms. McDaniel is the person most knowledgeable

1    *Findings*

2        At the outset, the undersigned observes that Ms. McDaniel's deposition testimony

3    regarding the duration of the computer problems is somewhat unclear.  While it appears that the

4    problem with the crashed server persisted until the new system was installed in June or July 2017,

5    Ms. McDaniel's testimony also suggests that the problems discovered in October 2016 were

6    repaired shortly thereafter.[4]

7        In any event, the evidence discussed above demonstrates, by a preponderance of the

8    evidence, that despite the October 2016 computer crash involving one server, the video plaintiff

9    sought may have been available had defendants placed a litigation hold following receipt of the

10   original complaint on or around November 12, 2017, taking into consideration the two-years

11   video retention policy.  Accordingly, the undersigned finds that defendants failed to take

12   reasonable steps to preserve the video after receiving plaintiff's complaint.  Zubulake v. UBS

13   Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates

14   litigation, it must suspend its routine document retention/destruction policy and put in place a

15   'litigation hold' to ensure the preservation of relevant documents.").[5]

16       The undersigned acknowledges that the video plaintiff requested may not have been

17   available had defendants requested a litigation hold upon receiving plaintiff's original complaint.

18   However, defendants cannot benefit from their failure to request a litigation hold by now claiming

19   that the video may or may not have been available due to the computer problems discussed above.

20

21   regarding the problems with the video computer system during the relevant time period, the
     undersigned does not consider Officer Perry's deposition testimony.  It seems likely that Officer

22   Perry may be confused regarding when the computer problems arose at the jail, as they occurred
     before he became Project Officer.

23

24   [4]  Ms. McDaniel testified, "We resumed normal operation after I contacted Mr. Kovacs."  (ECF
     No. 44-2 at 223.)  Earlier, Ms. McDaniel testified that after the crash, Mr. Kovacs sent an email

25   advising that "we needed to immediately upgrade the system."  (Id. at 218.)

26   [5]  In the opposition, defendants argue that searching for every video of plaintiff in the jail is
     overly burdensome.  As discussed above, the undersigned finds that plaintiff's complaint put

27   defendants on notice to retain videos of particular incidents alleged in the complaint.  The record
     contains no evidence that retrieving video of these particular incidents would have been overly

28   burdensome.

                                                    14

1    E.   Is Plaintiff Entitled to an Adverse Inference Instruction?

2          Pursuant to Federal Rule of Civil Procedure 37(e)(2), plaintiff requests that the court

3    instruct the jury that it must presume that the lost video evidence was unfavorable to defendants.

4          *Legal Standard*

5          To receive an adverse inference instruction, plaintiff must demonstrate that defendants

6    "acted with the intent to deprive" plaintiff of the information's use in the litigation. Fed. R. Civ.

7    P. 37(e)(2).

8          "Rule 37(e) does not define 'intent,' but courts have found that a party's conduct satisfies

9    the Rule 37(e)(2) 'intent requirement where the evidence shows or it is reasonable to infer[ ] that

10   the [ ] party purposefully destroyed evidence to avoid its litigation obligations.'" Colonies

11   Partners, L.P. v. County of San Bernardino, 2020 WL 1496444, at * 9 (quoting Porter v. City &

12   County of San Francisco, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018)).

13         "Intent may be inferred if a party is on notice that documents were potentially relevant and

14   fails to take measures to preserve relevant evidence, or otherwise seeks to 'keep incriminating

15   facts out of evidence.'" Id. (citing Leon v. IDX Systems, Corp., 464 F.3d 951, 959 (9th Cir.

16   2006); Blumenthal Distrib., Inc. v. Herman Miller,Inc., 2016 WL 6609208, at *17-19 (C.D. Cal.

17   July 12, 2016)).  "Courts also consider the timing of the document loss when evaluating intent.

18   Id. (citing GN Netcom, Inc. v. Plantronics, Inc., 2016 WL 3792833, at *7 (D. Del. Jul. 12, 2016)).

19         "The Advisory Committee notes indicate that negligent or even grossly negligent behavior

20   is insufficient to support sanctions under Rule 37(e)(2)." Aramark Management , LLC v.

21   Borgquist, 2021 WL 864067, at *6 (C.D. Cal. Jan. 27, 2021) (citing Fed. R. Civ. P. 37, Advisory

22   Committee Note to 2015 Amendment (rejecting Residential Funding Corp v. DeGeorge Financial

23   Corp., 306 F 3d 99 (2d Cir. 2002))).

24         The Advisory Committee Notes to Rule 37 contemplate that a district court may allow a

25   jury to decide whether a party who spoliated evidence acted with the necessary intent under Rule

26   37(e)(2), explaining:

27              Subdivision (e)(2) requires a finding that the party acted with the
               intent to deprive another party of the information's use in the
28             litigation. This finding may be made by the court when ruling on a

15

1    pretrial motion, when presiding at a bench trial, or when deciding
     whether to give an adverse inference instruction at trial.

2

3    [¶] If a court were to conclude that the intent finding should be made
     by a jury, the court's instruction should make clear that the jury may
     infer from the loss of the information that it was unfavorable to the

4    party that lost it only if the jury first finds that the party acted with
     the intent to deprive another party of the information's use in the

5    litigation. If the jury does not make this finding, it may not infer from
     the loss that the information was unfavorable to the party that lost it.

6

7    Id. (citing Fed. R. Civ. P. 37, Advisory Committee Note to 2015 Amendment; Epicor Software

8    Corp. v. Alt. Tech. Sols., Inc., 2015 WL 12734011 at *2 (C.D. Cal. Dec. 17, 2015) (allowing

9    parties to present disputed evidence of spoliation to the jury where the issue of intent was "an

10   open question of fact" upon which "reasonable trier[s] of fact" could disagree)).

11       However, "[f]inding an intent to deprive another party of the lost information's use in the

12   litigation does not require a court to adopt any of the measures listed in subdivision (e)(2).  The

13   remedy should fit the wrong, and the severe measures authorized by this subdivision should not

14   be used when the information lost was relatively unimportant or lesser measures such as those

15   specified in subdivision (e)(1) would be sufficient to redress the loss."  Fed. R. Civ P. 37

16   (advisory committee's notes to 2015 amendment).

17       *Discussion*

18       Plaintiff cites Colonies Partners, L.P. v. County of San Bernardino, 2020 WL 1496444

19   (C.D. Cal. 2020) as his "lead authority" for an adverse inference instruction.  (See ECF No. 51 at

20   4.)  Plaintiff contends that the court in Colonies followed the "well established authority in

21   holding that 'the' intent requirement under Fed. Civ. P. 37(e)(2) should be inferred if the

22   defending party was on notice that the documents were potentially relevant and failed to take

23   measures to preserve the evidence, for example, by failing to institute a litigation hold."  (Id.)

24       For the reasons stated herein, the undersigned finds that it is not reasonable to infer that

25   defendants intended to deprive plaintiff of the video evidence based only on defendants' failure to

26   request a litigation hold.  The record contains no evidence explaining why George Hills Company

27   and/or Mr. Chalfant failed to request a litigation hold.[6]  Without additional evidence regarding

28   _____

     [6]  The evidence suggests that the George Hills Company and Mr. Chalfant failed to request a

                                        16

why a litigation hold was not requested, the undersigned cannot find by a preponderance of the evidence that defendants' failure to request a litigation hold was motivated by an intent to deprive plaintiff of video evidence.  See United States v. HVI Cat Canyon, Inc., 2015 WL 12766161, at *2 (C.D. Cal. Nov. 20, 2015) (denying motion for terminating sanctions based on failure of counsel to request a litigation hold:  "The court has seen no evidence that California made a deliberate initial decision not to impose a litigation hold;" "At most, it appears that a lack of litigation competence was the cause of any spoliation of evidence.  Incompetence, however, is not bad faith.  In the absence of a showing of intent or bad faith, a terminating sanction is not warranted under the circumstances of this case.")

In finding that defendants' failure to request a litigation hold alone does not demonstrate an intent to deprive plaintiff of the video evidence, the undersigned also considered Blumenthal Distributing, Inc. v. Herman Miller, Inc., 2016 WL 6609208 (July 12, 2016), cited in Colonies, supra, where the court found that the failure to make a litigation demonstrated an intent to deprive plaintiff of evidence.

In Blumenthal, in considering terminating sanctions, the court found that the defendant willfully spoliated evidence by failing to institute a litigation hold after the case was filed, allowed automatic purging protocols to remain in effect throughout the litigation, failed to search its computer after served with discovery and mispresented to the court and plaintiff that it had conducted a thorough search and no relevant documents existed, when in fact there were numerous relevant emails of which defendants must have known.  2016 WL 6609208 at *19.  In contrast, the only evidence plaintiff cites in support of his claim that defendants intended to deprive him of the video is their failure to place a litigation hold.

In their opposition, defendants contend that two courts in this district have ruled that camera failures at detention facilities do not constitute a culpable state of mind for granting a spoliation motion, i.e., Scalia v. County of Kern, 2020 WL 5959905 (E.D. Cal. Oct. 8, 2020) and Harris v. German, 2019 WL 6700513 (E.D. Cal. Dec. 5, 2019).  The undersigned addresses these

litigation hold for any evidence, not just the missing video evidence.

1   cases herein.

2          In Scalia, the plaintiff filed a complaint on August 14, 2017, which he amended on

3   December 17, 2017, alleging violations of his constitutional rights while housed in the Lerdo Pre-

4   Trial Facility in June 2016.  2020 WL 5959905, at *1-2.  In opposing defendants' summary

5   judgment motion, plaintiff argued for the first time that defendants failed to maintain video

6   surveillance recordings at the jail information.  Id. at *3.  Plaintiff sought spoliation sanctions.  Id.

7   Plaintiff claimed that he served defendants with evidence preservation letters regarding the videos

8   in July 2016 and December 2016.  Id. at *4.  In a request for production of documents, plaintiff

9   sought video footage from the infirmary.  Id. at 5.  On October 30, 2018, defendant responded

10  that no such footage existed.  Id.

11         In Scalia, there was testimony from a jail employee that video footage was transmitted to

12  a recording derive in the electrical room.  Id. at *5.  However, "critical failures" happened with

13  the recording and storing of video which resulted in two emergency projects to add storage since

14  2016.  Id.  Due to the critical failures, it was believed that video footage was not stored for

15  thirteen months, as expected with the retention policy.  Id.  Some servers had less than adequate

16  software that was installed with them, and there was missing video.  Id.

17         The court in Scalia found that while the jail equipment was programmed to record, the

18  footage may not have been stored.  Id. at *8.  "Instead, plaintiff asks the court to assume this

19  evidence existed."  Id.  "Because Plaintiff fails to present evidence that the video footage of Ms.

20  Morrissey-Scalia in the infirmary existed at one time, the Court finds spoliation sanctions should

21  not be imposed."  Id.  The court in Scalia also denied the motion as untimely.  Id. at *7.

22         Had a litigation hold been requested when plaintiff filed the original complaint and no

23  relevant video footage found, the undersigned would find Scalia persuasive.  However, in the

24  instant case, the video may have been available had a litigation hold been requested at the time

25  plaintiff filed his original complaint.  In Scalia, it appears that a timely search for the video was

26  made after the request for a litigation hold.  In other words, in Scalia, the court did not consider

27  the issue faced by the undersigned:  whether defendants' failure to request a litigation hold

28  contributed to the loss of video.

1    In Harris, the court found sanctions based on the failure to produce video were

2 unsupported because plaintiff failed to establish that the video was destroyed.  2019 WL

3 6700513, at *2.  "Defendants were simply unable to locate either video after a reasonable search."

4 Id.  Harris did not involve a loss of evidence based on defendants' failure to request a litigation

5 hold.  The undersigned is not persuaded by defendants' citation to Harris.

6    In conclusion, for the reasons discussed above, the undersigned finds that plaintiff has not

7 demonstrated, by a preponderance of the evidence, that defendants acted with an intent to deprive

8 him of the video evidence by failing to request a litigation hold.[7]  For this reason, plaintiff's

9 request for an adverse inference instruction is denied, but without prejudice if the trial judge

10 ultimately feels otherwise.

11    F.   Is Plaintiff Entitled to Other Sanctions?

12    As discussed above, if the four criteria contained in Federal Rule of Civil Procedure 37(e)

13 are met, and the court finds prejudice to the party from the loss of information, the court may

14 order measures no greater than necessary to cure the prejudice.[8]  Fed. R. Civ. P. 37(e)(1).  "An

15 evaluation of prejudice from the loss of information necessarily includes an evaluation of the

16 information's importance in the litigation."  Adv. Comm. Notes to 2015 Amend. of Fed. R. Civ.

17 P. 37(e).  Rule 37(e)(1) "does not place a burden of proving or disproving prejudice on one party

18 or the other" and instead "leaves judges with discretion to determine how best to assess prejudice

19 in particular cases."  Id.

20    For the reasons discussed above, the four criteria contained in Federal Rule of Civil

21 Procedure 37(e) are met.  For the following reasons, the undersigned also finds that plaintiff is

22

23 [7]  In making this finding, the undersigned observes that in his declaration submitted in support of
the further briefing, defense counsels states that prior defense counsel Mr. Chalfant informed
24 present defense counsel that "the only video that existed was of plaintiff jumping off the fence
and presumably injuring his ankle…"  (ECF No. 50-1 at 2.)  The record contains no evidence
25 regarding how or when Mr. Chalfant obtained the information regarding the video of plaintiff
jumping off the fence.  The undersigned does not infer from Mr. Chalfant's ability to obtain the
26 video of plaintiff jumping off the fence that Mr. Chalfant engaged in purposeful conduct with the
intent to deprive plaintiff of the at-issue video.

27

28 [8]  The court is not required to make a finding of bad faith before awarding sanctions under Rule
37(e).  Spencer v. Lunada Bay Boys, 2018 WL 839862, at *1 (C.D. Cal. Feb. 12, 2018).

1   prejudiced by the loss of the video.

2          As discussed above, plaintiff's original complaint referenced the following incidents for

3   which video may have existed:  1) defendant Dominguez grabbing plaintiff's crutches and

4   making him hop to an attorney-client no-contact room; 2) plaintiff crawling on the floor to

5   activate the emergency button while in the holding tank; 3) on February 6, 2017, plaintiff

6   dragging his 80 bag of belongings while using a cane; 4) plaintiff crawling to the elevator on

7   February 8, 2017; and 5) plaintiff "doing his best" to go up the stairs to get to his cell on February

8   8, 2017.

9          In his motion for sanctions, plaintiff contends that the missing video would have given

10  him independent and objective evidence to present to the jury about his treatment in custody.

11  (ECF No. 44-1 at 23.)  Plaintiff contends that without the video evidence, he is left with his

12  testimony against that of the officer defendants.  (Id.)

13         In the further briefing, defendants argue that sanctions are not warranted because some of

14  plaintiff's allegations are uncontested.  (ECF No. 50 at 5.)  Defendants state that they do not

15  contest plaintiff's claim that he crawled to an elevator on February 8, 2017.  (Id.)

16         While defendants may not contest the February 8, 2017 incident, the undersigned finds

17  that plaintiff is prejudiced by the loss of the video.  The undersigned agrees that the video would

18  have been independent and objective evidence supporting plaintiff's testimony.

19         Accordingly, plaintiff is awarded monetary sanctions against defendants in the form of

20  reasonable attorneys' fees incurred by plaintiff in bringing the motion for sanctions regarding the

21  video evidence, including the further briefing order.

22         Accordingly, IT IS HEREBY ORDERED that:

23     1.   Plaintiff's motion for sanctions regarding spoliation of video evidence (ECF No. 44)

24         is granted;

25     2.  Plaintiff's request for an adverse inference instruction as a sanction is denied without

26         prejudice;

27     3.  Plaintiff is awarded monetary sanctions against defendants in the form of reasonable

28         attorneys' fees incurred by plaintiff in bringing the motion for sanctions regarding the

                                           20

video evidence, including the further briefing order; plaintiff shall submit a declaration in support of reasonable attorneys' fees and costs within fourteen days of the date of this order, and defendants shall file a response to the declaration within ten days of service of plaintiff's declaration.

Dated:  November 12, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Mkrtch.ord(3)